**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

U.S. COURTS
SEP 15 2020
Revd_____ Filed_____ Time_1:27pm
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case Number: 19-00138-JMM |
| Gordon Jones and Vicki L Jones | Chapter 11 |
| Debtors | Confirmation Hearing: September 28, 2020 at 11AM |

## Debtors' Amended Plan of Reorganization [as modified September 15, 2020]

Gordon Jones and Vicki L Jones, Debtors and Debtors in Possession ("Debtor") in the above captioned case, pursuant to 11 U.S.C. § 1121, hereby propose this Amended Plan of Reorganization ("Plan"), and request confirmation thereof pursuant to 11 U.S.C. § 1129.

### Introduction

This Plan is proposed by the Debtor for the resolution of the Debtor's outstanding creditor obligations. This Plan should be read in conjunction with the Debtor's Disclosure Statement.

Along with this proposed Plan, creditors will receive a Disclosure Statement which has been approved by the Court. The Court has determined that the Disclosure Statement is adequate to enable creditors to make an informed judgment on whether to accept or reject the Plan. The Disclosure Statement fully sets forth the Debtor's background information, an analysis of the Debtor's financial position and a summary of this Plan. The Debtor has not authorized any statement or representation, such as the value of Assets or the amount of Creditors' Claims, which is not contained in the Court-approved Disclosure Statement.

The provisions of the confirmed Plan will legally bind the Debtor and their Creditors, regardless of whether they have filed Claims or have accepted the Plan. Creditors should thoroughly review both the Plan and the Disclosure Statement before determining whether to accept or reject the proposed Plan.

# ARTICLE I

## Defined Terms, Rules of Interpretation, Computation of Time and Governing Law

A.) Rules of Interpretation, Computation of Time and Governing Law

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, in whatever form stated, shall include both the singular and the plural, and for each pronoun, shall include the masculine, feminine or neuter gender; (b) any reference in the Plan to a contract, instrument, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections, Articles and Exhibits are references to sections, Articles and Exhibits of or to the Plan; (e) the words herein, hereto and hereunder refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

B.) Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

    1.)    "Administrative Claim" means a Claim for costs and expenses of administration with priority under section 503(b), 507(a)(1) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and

leased premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims; and (c) all fees and charges assessed against the Estate under 28 U.S.C. sections 1911 through 1930.

2.) "Allowed" means, with respect to any Claim, except as otherwise provided herein, (i) (A) a claim that has been listed by the Debtor in his Schedules as other than disputed, contingent or unliquidated, (B) a claim that has been listed by the Debtor in his Schedules as disputed, contingent or unliquidated, to which a proof of claim has been timely filed and no party in interest has timely objected or (C) a claim that was not listed in the Debtor's Schedules, to which a proof of claim has been timely filed and no party in interest has timely objected; (ii) a Claim that has been allowed by a Final Order; (iii) a Claim that is allowed (A) in any stipulation with the Debtor of amount and nature of Claim executed on or after the Confirmation Date and authorized hereunder; or (B) in any contract, instrument, or other agreement entered into or assumed by the Debtor in connection with the Plan and thereby incorporated; (iv) a Claim relating to a rejected executory contract or unexpired lease that either (A) is not a Disputed Claim or (B) has been allowed by a Final Order, in either case only if a proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law; (v) a Claim that is allowed pursuant to the terms of this Plan; or (vi) an Administrative Tax Claim for a tax arising or incurring on or after the petition date, that is allowed pursuant the Bankruptcy Code, regardless of whether a Proof of Claim is Filed.

3.) "Assets" means any and all real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, equity interests, Causes of Action and any other general intangibles of the Debtor, of any nature whatsoever, including, without limitation, all property of the Estate.

4.) "Available Funds" means the Debtor's Cash on hand available for Cash payments, Distributions and other costs of administration, including, but not limited to, Net

Litigation Proceeds, proceeds from any exit or consolidation financing obtained and any proceeds received from the sale of Assets.

5.) "Bankruptcy Code" or "Code" as used herein refers to Title I of Public Law No. 95-598, as codified in Title 11 of the United States Code, and all amendments thereto, and applicable portions of titles 18 and 28 of the United States Code.

6.) "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court, for the District of Idaho, in which the Chapter 11 case is pending, such other court as has jurisdiction in the Chapter 11 case, and any court having competent jurisdiction to hear appeals or certiorari proceedings there from.

7.) "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, promulgated under 28 U.S.C. § 2075, and the General and Local Rules of the Bankruptcy Court.

8.) "Bar Date(s)" means such date(s) fixed by order(s) of the Bankruptcy Court by which proofs of Claim, proofs of interest, or requests for allowance of Administrative Claim must be filed.

9.) "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

10.) "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof.

11.) "Causes of Action" means (a) any avoidance, recovery or subordination actions of the Debtor arising under sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, (b) all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments of the Debtor, and (c) objections to Disputed Claims against the Debtor.

12.) "Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court.

13.) "Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor, including, but not limited to: (a) any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent,

matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

14.) "Class" means a category of Holders of Claims as set forth in Article III of the Plan.

15.) "Confirmation" means the confirmation of the Plan as evidenced by entry of the Confirmation Order, subject to all conditions specified in Article XI of the Plan having been (a) satisfied or (b) waived pursuant to Article XI.

16.) "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court in its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

17.) "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

18.) "Consummation" means the occurrence all Allowed Claims that are not Class 2 Unimpaired Claims being paid in full pursuant to the Plan.

19.) "Contingent Claim" means a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

20.) "Creditor" means any Holder of a Claim.

21.) "Debtor" or "Debtors" means Gordon Jones and Vicki L Jones, the Debtors in the Chapter 11 Case.

22.) "Debtor in Possession" means the Debtor, as the Debtor in possession in the Chapter 11 Case.

23.) "Disallowed" means, with respect to any Claim, a Claim the has been declared by Final Order to be disallowed or not allowed in regards to voting on the Plan and/or receiving Distribution(s) thereunder.

24.) "Disclosure Statement" means the Debtor's Disclosure Statement, as amended, supplemented, or modified from time to time, describing the Plan, which is prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

25.) "<u>Disputed Claim</u>" means any Claim (a) as to which the Debtor or any other party in interest has Filed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order, or (b) a Claim a that was listed on the Debtor's Schedules as contingent, disputed and/or unliquidated for which no Proof of Claim was Filed or an untimely or improper Proof of Claim was Filed.

26.) "<u>Distribution</u>" means the payment of Cash or conveyance of Assets to be distributed to Holders of Allowed Claims under Article VIII of the Plan.

27.) "<u>Distribution Dates</u>" means the dates on which payments or Distributions are made or to be made, including the Initial Distribution Date, to Allowed Creditors.

28.) "<u>Effective Date</u>" means the first Business Day which is at least 30 days after all of the following have occurred (so long as they remain in effect) (a) this Plan has been confirmed pursuant to the Confirmation Order and the Confirmation Order remains in full force and effect without material modification thereof; (b) there is not in effect any stay, injunction or restraining order or any other order of any kind which has been issued by a Court of competent jurisdiction or other governmental entity staying, restricting or prohibiting the effectuation of this Plan; and (c) there is not in effect any statute, rule, regulation or order enacted, promulgated or entered which is applicable to the effectuation of this Plan of which results in the consequences referred to in subsection (b) immediately above.

29.) "<u>Entity</u>" means an entity as defined in section 101(15) of the Bankruptcy Code.

30.) "<u>Estate</u>" means the estate of the Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

31.) "<u>File</u>" or "<u>Filed</u>" means the action of filing a document with the Bankruptcy Court in the docket of the Chapter 11 Case.

32.) "<u>Final Decree</u>" means the decree contemplated under section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

33.) "<u>Final Order</u>" means a final order, judgment or other decree of the Bankruptcy Court or other Court of competent jurisdiction which has not been vacated, reversed, saved, modified or amended (a) as to which (i) the time to appeal or seek review or rehearing

has expired and as to which no appeal, petition for certiorari, request for review or rehearing is pending, or (ii) if appeal, review, rehearing or certiorari of the order has been sought, the order has been affirmed or the request for review, rehearing or certiorari has been denied, the time to seek a further appeal, review, rehearing or certiorari has expired, and (b) as a result of which such orders shall become final and not appealable in accordance with applicable law.

34.) "Holder" means a Person or Entity holding a Claim.

35.) "Impaired" means impaired within the meaning of section 1124 of the Bankruptcy Code.

36.) "Initial Distribution Date" means the first Business Day that is not less than 15 days after the Effective Date.

37.) "Lien" or "Liens" means any charge against or interest in property to secure payment of a debt or performance of an obligation, and includes any right of set-off section 553 of the Bankruptcy Code.

38.) "Net Litigation Proceeds" means the amount(s) received through assertion or prosecution by the Debtor of any Causes of Action, including amounts received by settlement, net of the costs and expenses incurred in connection with the investigation and prosecution of such Causes of Action.

39.) "Other Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

40.) "Person" means a person as defined in section 101(41) of the Bankruptcy Code.

41.) "Petition Date" means February 14, 2019, the date on which the Debtor filed his petition for relief commencing the Chapter 11 Case.

42.) "Plan" means this Chapter 11 Plan of Reorganization, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules.

43.) "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

44.) "Pro Rata" shall mean the proportion that an Allowed Claim in a particular class bears to the aggregate amount of all Allowed Claims in such class.

45.) "<u>Professional</u>" means a Person or Entity (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Confirmation Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

46.) "<u>Professional Fee Claim</u>" means those fees and expenses claimed by Professionals retained through a Bankruptcy Court order pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code, and unpaid as of the Confirmation Date.

47.) "<u>Professional Fees</u>" means all Allowed Claims for compensation and for reimbursement of expenses under sections 328 and 330 of the Bankruptcy Code.

48.) "<u>Proof of Claim</u>" means a proof of claim Filed pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court.

49.) "<u>Schedules</u>" means the schedules of assets and liabilities as the Bankruptcy Court requires the Debtor to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and the Debtor's statement of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court requires the Debtor to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

50.) "<u>Secured Claim</u>" means (a) a Claim that is secured by a lien on property in which the Estate has an interest, which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) a Claim Allowed under this Plan as a Secured Claim.

51.) "<u>Unimpaired</u>" means not impaired within the meaning of section 1124 of the Bankruptcy Code.

52.) "<u>Unsecured Claim</u>" means any Claim against the Debtor that is not a Secured Claim, Administrative Claim, Priority Tax Claim or Other Priority Claim.

53.)  "US Trustee" means the Office of the United States Trustee for the region in which the Bankruptcy Court is located.

## ARTICLE II

### Administrative Claims, Professional Fees and Priority Tax Claims

Certain types of Claims are not placed into voting Classes, instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the Claims described in this Article II in a Class.

A.) Administrative Claims

All costs and expenses of administration in this case, including any actual and necessary expenses of preserving or liquidating the assets of the Debtors' estate, all allowances, including Professional Fees and costs, approved by the Bankruptcy Court, and any other costs and expenses entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code and 28 U.S.C. § 1930, shall be paid in full on the Effective Date of the Plan.  The Holders of these Claims include the attorneys, accountants or other Professionals of the Debtor, unpaid post-petition accounts payable (if any), and all fees to be paid to the US Trustee.

With respect to all Administrative Claims other than Professional Fee Claims not paid on the Effective Date, the Debtor shall pay each Holder of an Allowed Administrative Claim (except for Professional Fees to the extent that their treatment, which is set forth below, differs) in full in the amount of the Allowed Claim, without interest, in Cash within 60 days after the Claim becomes an Allowed Claim; provided, however, the Holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by that Holder and the Debtor.

Subject to the other provisions of the Plan, all reasonable fees for services rendered after the Confirmation Date in connection with the Chapter 11 Case and the Plan, including those relating to the resolution of pending Claims, shall be paid by the Debtor without further Bankruptcy Court authorization.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument available that such Claim is already time-barred by prior orders of the Bankruptcy Court, all Holders of Administrative Claims incurred prior to the Effective Date, other than Holders of Professional Fee Claims, that have not been paid as of the Effective Date, must file a request for payment of Administrative Claims with the Bankruptcy Court and serve the same on the Debtor and the US Trustee such that it is received no later than 30 days after the conclusion of the Confirmation Hearing, or such Claim shall be forever barred and shall not be enforceable against the Debtor or their successors, assigns or property. An objection to an Administrative Claim must be filed within 60 days from the date such Claim is Filed.

Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code or arising from the sale of assets under the Plan.

The Debtor's approximate outstanding Administrative Claims are as follows:

| Creditor/Holder | Claim Amount |
|---|---|
| Internal Revenue Service | $1,800.00  (Self-Employment Tax) |

B.) Professional Fee Claims

The Bankruptcy Court must rule on all Professional Fee Claims before the fees will be payable. For all Professional Fee Claims except the Clerk's Office fees and US Trustee's fees, the Professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application. Only the amount of fees allowed by the Bankruptcy Court will be owed and required to be paid under the Plan.

Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered prior to the Confirmation Date must File and serve (pursuant to the notice provisions of administrative order(s) entered by the Bankruptcy Court on interim compensation of Professionals), an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization

and approval of the Bankruptcy Court. Holders of Professional Fee Claims requesting compensation or reimbursement of expenses that do not file such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtor or their successors, assigns or property. Any objection to Professional Fee Claims shall be filed on or before the date specified in the application for final compensation.

The Debtor's outstanding Professional Fee Claims are as follows:

| Creditor/Holder | Claim Amount |
|---|---|
| Grigg, Bratton & Brash, P.C. | $6,228.00 |

C.) Priority Tax Claims

Each Holder of such an Allowed Priority Tax Claim shall be paid 100% of their Allowed Claim, with interest at the applicable rates, via Cash installment payments with the first payment beginning on the Effective Date (provided, however, the Holder of an Allowed Priority Tax Claim may be paid on such other date and upon such other terms as may be agreed upon by that Holder and the Debtor.); and thereafter a minimum of one payment every 30 calendar days until each Claim is paid in full. All Priority Tax Claims shall be paid in full no later than 450 days from the Effective Date.

At any time a payment is due, (a) if the outstanding balance due is less than $1,500, then such balance shall be paid in full at that time or (b) if the outstanding balance is greater than $1,500, then the minimum amount to be paid shall be $1,500 per Claim Holder, however, the Debtor, at his sole discretion, may choose to pay more than $1,500, based upon the Available Funds at the time that any payment becomes due.

As of August 19, 2020, applicable tax returns for 2015 – 2018 have been filed by the Debtor reflecting an amount of $724 due to the Internal Revenue Service and no tax due to the Idaho State Tax Commission. The amounts shown below are based on the approximate amounts from the Creditors' Proofs of Claim and such amounts shall be amended (or withdrawn if no amount due) by the Creditors upon the processing of such filed tax returns. Any current tax returns shall be timely filed or a timely extension filed and post-petition tax obligations arising during the pendency of this Chapter 11 Case shall be paid as required by the Bankruptcy Code and the applicable tax code.

As of the Petition Date, the Debtor's outstanding Priority Tax Claims are as follows:

| Creditor/Holder | Claim Amount |
|---|---|
| Idaho State Tax Commission | $22,704.28 |
| Internal Revenue Service | $12,914.97 |
| *Total* | *$35,619.25* |

## ARTICLE III

## Classification and Treatment of Classified Claims

The categories of Claims and listed below classify Claims and for all purposes, including voting, Confirmation and Distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been paid or otherwise settled or satisfied prior to the Effective Date. All amounts owing declared in this Article II are approximate as of the Petition Date and the exact amounts may be more or less as of the Effective Date.

The classification and treatment of Claims pursuant to the Plan are as follows:

A.) *Class 1 - Secured Tax Claims [Ada County Treasurer]* – *(Impaired)*

This Class consists of multiple Allowed Secured Claims held by the Ada County Treasurer in Ada County, Idaho, resulting from delinquent property taxes for 2016, 2017 and 2018. These Claims are secured by statutory Liens against many of the Debtor's real properties located in Ada County, Idaho.

The Creditor in this Class shall be paid 100% of its Allowed Claims, with interest at the rate of 12% per annum, calculated from the Petition Date, via Cash installment payments with the first payment beginning on or before the Initial Distribution Date; and thereafter a minimum of one payment every 90 calendar days until each Claim is paid in full. All Claims within this Class shall be paid in full no later than 450 days from the Effective Date, and the Creditor shall retain each Lien until the corresponding Claim is paid in full.

Whenever a payment is due, the minimum amount to be paid to the Creditor shall be $1,500, however, the Debtor, in his sole discretion, may choose to pay more than $1,500, based upon the Available Funds at the time that any payment becomes due.

Should any property, which is encumbered by any one of the underlying Liens of the Claims in this Class, be sold, such Claim(s) shall be paid in full at closing from the proceeds of any such sale and the respective underlying Lien(s) shall be released upon such satisfaction.

As of the Petition Date, the total amount of these Claims is $39,997.26.

B.) *Class 2 – Secured Claims [Bank-Originated Mortgages]* – *(Unimpaired)*

This Class consists of several Allowed Secured Claims, stemming from bank-originated mortgage contracts between the Debtor and each Creditor. These Claims are secured by mortgages/deeds of trust against several of the Debtor's real properties located in Ada County, Idaho.

The Creditors in this Class shall be paid 100% of their Allowed Claims, in accordance with the terms and conditions of their respective mortgage contracts. The Debtor is current on all payments for these Claims and shall continue to make future payments in accordance with the terms and conditions of each mortgage contract. All terms and conditions of the mortgage contracts between the Debtor and the Creditors shall remain unchanged, including maturity dates and each Creditor shall retain their Lien until their respective Claim is paid in full.

To the best of Debtor's knowledge and belief, all pre-petition arrears on these Claims were cured in 2019 and the Debtor is not aware of any post-petition arrears related to these Claims. To the extent that such arrears do exist and are due and owing at the time of Confirmation, the Debtor shall work with each Creditor or their respective counsel to determine the amount of arrears due so that such arrears can be cured by the Debtor as of the Effective Date.

Based upon available funds, the Debtor shall have the right, at the Debtor's sole discretion, to pay any or all of these Claims in full prior to maturity.

Should any property, which is encumbered by any one of the underlying Liens of the Claims in this Class, be sold, such Claim(s) shall be paid in full at closing from the proceeds of any such sale and the respective underlying Lien(s) shall be released upon such satisfaction.

As of the Petition Date, the amounts of these Claims are as follows:

| Subclass | Creditor | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|---|
| 2A | JPMorgan Chase Bank, N.A. | $103,333.11 | $102,434.66 | $102,434.66 |
| 2B | Ocwen Loan Servicing, LLC / U.S. Bank, N.A. | $75,208.37 | $76,323.65 | $76,323.65 |
| 2C | Wells Fargo Bank, N.A. / Deutsche Bank National Trust Co | $72,692.45 | $73,709.67 | $73,709.67 |
| | *Total* | *$251,233.93* | | *$252,467.98* |

C.) *Class 3 – Secured Claims [Richard Zamzow]* – (Impaired)

This Class consists of two Allowed Secured Claims, whether Disputed or not, stemming from two promissory note agreements between the Debtor and Creditor, Richard Zamzow. These claims are secured by deeds of trust against several of the Debtor's real properties located in Ada County, Idaho.

The Creditor filed a motion for relief from the automatic stay in August, 2019 and on December 11, 2019, the Debtors and the Creditor were able to work out an agreement to resolve the Creditor's motion based upon the following stipulations:

a)  The Debtor shall commence making adequate protection payments to Creditor in the amount of $1,500.00 by the last day of each month commencing December 2019 and going thru through April 30, 2020.

b)  The Debtor shall file a Plan and Disclosure Statement by January 30, 2020.

c)  The Debtor shall pay the Creditor in full, including all principal, interest and reasonable fees and costs by April 30, 2020.

d)  The Creditor shall provide Notice of the agreement to all creditors and interested parties.

e)  In the event of Debtor's default under the terms of the agreement, the Creditor shall provide Notice of the default to the Court.

f)  Upon providing such Notice, the Creditor shall be entitled to an order for stay relief for the properties securing the Creditor's Claims.

The Debtor was not able to pay the Creditor in full by April 30, 2020 and subsequently on May 19, 2020 the Bankruptcy Court granted an order for stay relief to the Creditor. Given the Creditor has obtained stay relief, it is probable that the Creditor will seek to re-foreclose on the subject properties.

If the Creditor does not seek foreclosure or seeks foreclosure only on a portion of the subject properties, the Debtor proposes alternative treatment as follows: (a) The Creditor in this Class shall be paid 100% of his Allowed Claims, with interest at the rate of 3% per annum, calculated from the Petition Date, via interest-only payments with the first payment beginning on or before the Initial Distribution Date in an amount of at least $1,500; and thereafter a minimum of one payment every 90 calendar days until each Claim is paid in full, with such subsequent payments equaling at least $3,000. All Claims within this Class shall be paid in full no later than 450 days from the Effective Date, and the Creditor shall retain his Lien(s) until his respective Claims are paid in full; or (b) such other treatment as to which the Debtor and the Creditor will have agreed upon in writing.

The Debtor and the Creditor shall retain their rights to negotiate a settlement whereby the Debtor may convey the secured property or equity interest therein to the Creditor, in satisfaction, in whole or in part, of the relevant Secured Claim.

Should any property, which is encumbered by any one of the underlying Liens of the Claims in this Class, be sold, such Claim(s) shall be paid in full at closing from the proceeds of any such sale and the respective underlying Lien(s) shall be released upon such satisfaction.

As of the Petition Date, the amounts of these Claims are as follows:

| Claim No. | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| 16-1 | $557,589.04 | $556,822.18 | $556,822.18 |
| 17-1 | $919,101.03 | $955,763.70 | $955,763.70 |
| *Total* | *$1,476,690.07* | | *$1,512,585.88* |

D.) *Class 4 – Secured Claims [Over-secured]* – (Impaired)

This Class consists of several Secured Claims not classified elsewhere, whether Disputed or not, each of which are over-secured, and all stemming from promissory note agreements between the Debtor and each Creditor. Two of these Claims are secured by deeds of trust against

two of the Debtor's real properties located in Payette County, Idaho and the third Claim is secured by personal property of the Debtor in the form of a front-end loader.

The Creditors in this Class shall be paid 100% of their Allowed Claims, with interest at the rate of 3% per annum, calculated from the Petition Date, via interest-only payments with the first payment beginning on or before the Initial Distribution Date in an amount of at least $1,500 to each Creditor; and thereafter a minimum of one payment every 90 calendar days until each Claim is paid in full, with such subsequent payments totaling at least a combined $4,500 payment split between the Creditors of this Class. All Claims within this Class shall be paid in full no later than 450 days from the Effective Date, and each Creditor shall retain their Lien until their respective Claim is paid in full.

The Debtor and each Creditor shall retain their rights to negotiate a settlement whereby the Debtor may convey the secured property or equity interest therein to the Creditor, in satisfaction, in whole or in part, of the relevant Secured Claim.

Should any property, which is encumbered by any one of the underlying Liens of the Claims in this Class, be sold, such Claim(s) shall be paid in full at closing from the proceeds of any such sale and the respective underlying Lien(s) shall be released upon such satisfaction.

As of the Petition Date, the amounts of these Claims are as follows:

| Subclass | Creditor | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|---|
| 4A | David Kennison | $124, 087.46 | | $124, 087.46 |
| 4B | Jessie Rose / Rose Family Trust | $281,495.40 | | $281,495.40 |
| 4C | Richard Zamzow | $72,000 | $100,000 | $100,000 |
| | *Total* | *$477,582.86* | | *$505,582.86* |

E.) *Class 5 – Secured Claims [Under-secured] – (Impaired)*

This Class consists of several Secured Claims not classified elsewhere, whether Disputed or not, each of which are under-secured, and all stemming from promissory note agreements between the Debtors and each Creditor. One of these Claims is secured by deeds of trust against several of the Debtor's real properties located in Ada County and Payette County, Idaho and the

third Claim is secured by personal property of the Debtor in the form of an excavator and forklift.

The Creditors in this Class shall be paid 100% of their Allowed Claims, with interest at the rate of 3% per annum, calculated from the Petition Date, via interest-only payments with the first payment beginning on or before the Initial Distribution Date in an amount of at least $1,500 to each creditor; and thereafter a minimum of one payment every 90 calendar days until each Claim is paid in full, with such subsequent payments totaling at least a combined $3,000 payment split between the Creditors of this Class. All Claims within this Class shall be paid in full no later than 450 days from the Effective Date, and each Creditor shall retain their Lien until their respective Claim is paid in full. Each Creditor in this Class shall also have a general Unsecured Claim in the amount of their Secured Claim deficiency.

The Debtor and each Creditor shall retain their rights to negotiate a settlement whereby the Debtor may convey the secured property or equity interest therein to the Creditor, in satisfaction, in whole or in part, of the relevant Secured Claim.

Should any property, which is encumbered by any one of the underlying Liens of the Claims in this Class, be sold, such Claim(s) shall be paid in full at closing from the proceeds of any such sale and the respective underlying Lien(s) shall be released upon such satisfaction.

As of the Petition Date, the amounts of these Claims are as follows:

| Subclass | Creditor | Scheduled Amount | Proof of Claim Amount | Deficiency Amount | Allowed Secured Amount |
|----------|----------|------------------|-----------------------|-------------------|------------------------|
| 5A | James Belenis | $773,886.13 | | $102,886.13 | $671,000 |
| 5B | Richard Gannon | $155,589.04 | | $35,589.04 | $120,000 |
| | *Total* | *$929,475.17* | | *$138,475.17* | *$791,000.00* |

F.) *Class 6 – General Unsecured Claims*

    1.) *Class 6A – Unsecured Tax Claims – (Impaired)*

This Class consists of all Allowed Unsecured tax Claims not classified elsewhere.

The Creditors in this Class shall be paid 100% of their Allowed Claims, with interest at the applicable rates, calculated from the Confirmation Date. All Claims within this Class shall be paid in full no later than 450 days from the Effective Date.

No interim payments shall be required during the 450 day period, however, the Debtor, in his sole discretion, may choose to make one or more payments toward these Claims, but no such payments shall be made until all Allowed Administrative, Priority and Secured Claims are paid in full. In the event that the condition precedent stated above is met, and the Debtors choose to make any such payment to this Class of Claims, the amount paid for any such payment shall be divided among all Class 6 Claims according to their Pro Rata share. The amount of any such payment shall be at the sole discretion of the Debtor, based upon Available Funds at the time of such payment.

As of August 19, 2020, applicable tax returns for 2013 – 2018 have been filed by the Debtor reflecting no outstanding amounts owing for that period, however, the Idaho State Tax Commission claims an amount owing for 2011-2012, therefore Debtor will be filing returns for those years and anticipates that there will be no amount owing, due to losses incurred during 2011-2012. The amounts shown below are based on the approximate amounts from the Creditors' Proofs of Claim and such amounts shall be amended (or withdrawn if no amount due) by the Creditors upon the processing of such filed tax returns. Any current tax returns shall be timely filed or a timely extension filed and post-petition tax obligations arising during the pendency of this Chapter 11 Case shall be paid as required by the Bankruptcy Code and the applicable tax code.

As of the Petition Date, the amounts of these Claims are as follows:

| Creditor | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| Idaho State Tax Commission | $0 | $51,280.49 | $51,280.49 |
| Internal Revenue Service | $9,416.07 | $9,416.07 | $9,416.07 |
| *Total* | *$9,416.07* | *$60,696.56* | *$60,696.56* |

2.) *Class 6B – Unsecured Claims – (Impaired)*

This Class consists of all Allowed Unsecured Claims not classified elsewhere, including Disputed Claims to the extent such Disputed Claims may be proven and Allowed by the Court.

The Creditors in this Class shall be paid 100% of their Allowed Claims, with interest at the rate of 2% per annum, calculated from the Confirmation Date. All Claims within this Class shall be paid in full no later than 450 days from the Effective Date.

No interim payments shall be required during the 450 day period, however, the Debtor, in his sole discretion, may choose to make one or more payments toward these Claims, but no such payments shall be made until all Allowed Administrative, Priority and Secured Claims are paid in full. In the event that the condition precedent stated above is met, and the Debtors choose to make any such payment to this Class of Claims, the amount paid for any such payment shall be divided among all Class 6 Claims according to their Pro Rata share. The amount of any such payment shall be at the sole discretion of the Debtor, based upon Available Funds at the time of such payment.

As of the Petition Date, the amounts of these Claims are as follows:

| Creditor | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| Alvin Hohbach | $32,674.44 | | $32,674.44 |
| Barbara Little | $45,000 | | $45,000 |
| Beck Gold Creek Ranch, LLC | $581,301 | $581,301 | $581,301 |
| Brad Schuppan | $148,254.24 | | $148,254.24 |
| Brian Webb Legal | $6,894.50 | | $6,894.50 |
| Carolyn Cannon | $24,853.04 | | $24,853.04 |
| Chet Pipkin | $72,000 | | $152,000 |
| Citibank, N.A. | $7,699.87 | | $7,699.87 |
| City of Fruitland | $3,543.67 | | $3,543.67 |
| David Sikkema | $49,670 | | $49,670 |
| Discover Bank | $6,211.85 | $6,211.85 | $6,211.85 |
| Discover Bank | $15,033.61 | $15,061.50 | $15,061.50 |
| Free River LLC | $20,717 | | $22,917 |
| Gene Louie | $52,621.23 | | $52,621.23 |
| Glen Alleman | $60,232.88 | | $60,232.88 |
| James Belenis | $102,886.13 | | $102,886.13 |

| | | | |
|---|---|---|---|
| Jeremy Pixton | $157,934.25 | | $157,934.25 |
| John Chapman | $73,452.05 | | $73,452.05 |
| JPMorgan Chase Bank, N.A. | $13,830 | | $13,830 |
| KeyBank N.A. | $44,470.28 | $45,603.05 | $45,603.05 |
| KeyBank N.A. | $7,304.55 | $6,704.64 | $6,704.64 |
| Knife River Corporation - Northwest | $830,829.60 | $731,245.79 | $ 833,186.62 |
| Michael Dixon | $737,836.61 | | $744,636.61 |
| Michael Purtill | $73,178.63 | | $73,178.63 |
| Milodragovich, Dale & Steinbrenner, P.C. | $74,322.06 | $74,322.06 | $74,322.06 |
| Nickolas Louie | $119,904.11 | | $119,904.11 |
| Norco, Inc C/O Professional Credit Service | $822 | $828.73 | $828.73 |
| Olexander Hnojewyj | $77,220.27 | $77,122.24 | $77,122.24 |
| Portfolio Recovery Associates / Citibank, N.A. | $4,892 | $4,892.28 | $4,892.28 |
| Portfolio Recovery Associates / Capital One Bank (USA), N.A. | $20,762 | $20,762.10 | $20,762.10 |
| Richard Gannon | $35,589.04 | | $35,589.04 |
| Runft & Steel Law Offices | $0 | $168,644.38 | $168,644.38 |
| Sally McMinn | $48,500 | | $48,500 |
| Tyson Jones | $25,000 | | $25,000 |
| U.S. Bank, N.A. | $16,686.54 | | $16,686.54 |
| U.S. Bank, N.A. / Capital Management Services, LP | $680.24 | | $680.24 |
| Walter & Tina Kightly | $28,326.7 | | $28,326.70 |
| Wellington Pierce | $132,452.61 | | $132,452.61 |
| *Total* | *$3,753,587.00* | | *$4,014,058.23* |

G.) *Class 7 – Equity Interests* – *(Unimpaired)*

This class consists of all the equity interests of the Debtor in Estate property as of the Petition Date. These interests shall remain unchanged and the Debtor shall retain all legal, equitable and/or contractual rights of such interests as they existed on the Petition date.

## ARTICLE IV
### Acceptance or Rejection of the Plan

A.) Voting Classes

Because they are Impaired, each Holder of an Allowed Claim in Classes 1, 3, 4, 5 and 6 is entitled to vote to either accept or to reject the Plan. Only those votes actually cast by Holders of Allowed Claims who are non-insiders shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

B.) Acceptance by Impaired Classes

An Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount and (b) more than one-half in number of the Allowed Claims actually voting in such Class, have voted to accept the Plan.

C.) Presumed Acceptance of Plan

Classes 2 and 7 are Unimpaired and not entitled to vote and are therefore conclusively deemed to have accepted the Plan.

## ARTICLE V
### Effect of Confirmation

A.) Vesting of Cash and Assets in the Debtor

Except to the extent otherwise provided in the Plan or restricted by prior order of the Bankruptcy Court, on the Effective Date, all right, title and interest in the Assets of the Estate shall be transferred to and vest in the Debtor free of any Claims and Liens, to be managed and

used for purposes including but not limited to achieving Consummation and carrying out the Plan and effectuating the Distributions provided for in the Plan.

As of the Effective Date, all property of the Debtor shall be free and clear of all Liens or Claims, except as otherwise specifically provided in the Plan. As of the Effective Date, all mortgages, deeds of trust, Liens or security interests in any property of the Estate will be released and all the right, title and interest of any Holder of any such mortgages, deeds of trust, Liens or security interests shall be canceled, annulled, terminated and become null and void, except as otherwise specifically provided in the Plan. If the Confirmation Order is ever reversed or revoked, this provision of the Plan shall become null and void, and all Liens remaining unsatisfied and existing before the Confirmation Date shall be revived.

B.) Authority to Effectuate Plan

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Plan shall be deemed authorized and approved without further approval from the Bankruptcy Court. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary, including, without limitation, hire Professionals, to achieve Consummation and carry out the Plan and to effectuate the Distributions provided for thereunder. The Debtor shall be authorized to retain, use, lease, abandon, invest, sell or encumber any Assets without further approval from or order of the Bankruptcy Court. With respect to any actions, that may be taken by the Debtor, that would encumber any Asset, such encumbrances or Liens shall be junior to the Liens, of remaining Secured Claims, if any, provided for under Article III of the Plan.

C.) Binding Effect

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan and all exhibits thereto shall bind the Debtor and all Creditors and Holders of Claims.

D.) Injunction

Confirmation and performance of this Plan will discharge the Debtor from any and all debts dischargeable under Section 1141(d) of the Bankruptcy Code and will otherwise have all effects provided in such Section 1141, which are not expressly inconsistent with the provisions

of this Plan. The Debtor will not receive a discharge until the Bankruptcy Court grants a discharge upon Consummation of the Plan or as otherwise allowed under section 1141(d) of the Bankruptcy Code.

Except as provided in Article XVII(N), a stay will continue to be in effect after confirmation of the Plan, and all Creditors will continue to be enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any pre-petition Claim, debt, right or Cause of Action against the Debtor or property of the Debtor unless and until: (a) the Bankruptcy Court has entered an Order Closing the Debtor's case or Final Decree; (b) the Bankruptcy Court has otherwise expressly ordered; (c) this Plan otherwise expressly provides for such relief; or (d) the Court has entered an Order of Discharge. Notwithstanding the foregoing, a Class 2 Unimpaired Claim Holder may serve on Debtor a notice of default letter related to any default on the Plan without first seeking relief from such stay.

## ARTICLE VI
## Implementation of the Plan

A.) Means of Execution of the Plan

The Means to carry out the Plan, effectuate Distributions and achieve Consummation shall be funded, in whole or in part, through the liquidation, on a going concern basis, of several of the Debtor's Assets, namely several highly marketable parcels of real property located in Ada County & Payette County, Idaho. The Debtor seeks to only sell the number of marketable properties sufficient to allow satisfaction of all outstanding debt obligations. The properties to be marketed and/or sold will include one or more of the following:

| Property Address/Description | Approximate Value |
| --- | --- |
| 8542 W Floating Feather Rd, Star, ID | $3,200,000 |
| Palisades Center Subdivision, Fruitland, ID | $2,100,000 |
| 9351 W State St, Boise, ID | $735,000 |
| 205 W Myrtle St, Boise, ID | $630,000 |
| 4531 Hill Rd, Boise, ID | $500,000 |
| E Blacks Creek Rd, Boise, ID | $320,000 |

| E Blacks Creek Rd, Boise, ID | $295,000 |
| 329 West Blvd, New Plymouth, ID | $300,000 |
| 220 S Iowa Ave, Fruitland, ID | $240,000 |
| 210 S Iowa Ave, Fruitland, ID | $110,000 |

The marketing and/or selling of any properties will be accomplished in one or more ways, including but not limited to (a) listing on MLS through a licensed Realtor/Broker; (b) self-listing on MLS; (c) listing on various public and private facing "For Sale By Owner" publications, classifieds, forums or platforms; (d) real estate auction services; (e) unsolicited direct sales; and/or (f) presentation to various professional business contacts known by the Debtor. In these efforts, the Debtor may utilize the professional services of, including but not limited to, Michael Ballantyne of Thorton Oliver Keller Real Estate and Larry Downs of Downs Auction Inc.

In addition, the Debtor may also obtain exit or consolidation financing, in conjunction with asset liquidations, in order to carry out the Plan in an as efficient and expedient manner as possible. Should such exit/consolidation financing be obtained, it would allow the Debtor to satisfy, in whole or in part, current Creditor obligations and consolidate them into a single long-term obligation that is more favorable and more easily managed outside of bankruptcy. The Debtor is currently in negotiations with several different private lenders regarding such financing, the details of which shall be disclosed upon consummation and final agreement of such negotiations with any one particular lender.

The Debtor also reserves the right to negotiate with Creditors, whereby Assets or equity interest(s) in such Assets may be conveyed to such Creditors in satisfaction, in whole or in part, of such Creditors' Claims.

B.) Duties of the Debtor

The Debtor shall work diligently to liquidate said Assets for the highest value reasonably possible and in as little time as is reasonable. If it is needed and is be in the best interests of Consummating the Plan, the Debtor shall also work diligently to obtain exit/consolidation financing. The Debtor shall use Assets in a manner that is most beneficial and efficient to carrying out the terms of the Plan.

C.) Agents of the Debtor; Payment of Such Agents

In order to carry out his duties under the Plan, the Debtor, in addition to his other rights under the Plan, shall have the right, but not the obligation, and without further approval from or order of the Bankruptcy Court, (a) to retain and compensate professionals (including but not limited to the Professionals retained by the Debtor prior to the Effective Date) and other Persons to assist the Debtor in achieving Consummation of the Plan, and (b) to employ such other procedures not inconsistent with the Plan.

## ARTICLE VII
### Treatment of Executory Contracts and Unexpired Leases

A.) Rejection of Executory Contracts and Unexpired Leases

The Debtor reserves the right to assume or reject, pursuant to section 365 of the Bankruptcy Code, any executory contract or unexpired lease not assumed or rejected prior to the Confirmation Date.  All executory contracts and unexpired leases not specifically assumed or rejected as of the Confirmation Date or as to which an application to assume shall not be pending on the Confirmation Date shall be deemed rejected. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

B.) Claims Based on Rejection of Executory Contracts or Unexpired Leases

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed with the Bankruptcy Court by any applicable deadline set by Final Order of the Bankruptcy Court and in no event later than thirty (30) days after the Confirmation Date. Any Entity that fails to assert a Claim arising from the rejection of an executory contract or unexpired lease within such time will be forever barred from asserting such Claim against the Debtor and his estate and/or property, unless otherwise ordered by the Bankruptcy Court or provided in the Plan. All such Claims timely filed will be treated as Unsecured Claims.

## ARTICLE VIII

### Provisions Governing Distributions

A.) Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court, Distributions, on account of those Claims that are Allowed as of the Effective Date and are entitled to receive Distributions under the Plan, shall begin on the Initial Distribution Date. Distributions on account of Claims that become Allowed after the Effective Date shall be made pursuant to the provisions of the Plan.

B.) Manner of Payment

Any payment of Cash made under the Plan may be made either by check drawn on a domestic bank, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Debtor.

Under section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under a plan may not be taxed under any law imposing a stamp tax or similar tax. Pursuant thereto and because the Debtor shall be selling Assets hereunder, entry of the Confirmation Order shall be a determination that no stamp tax or similar tax may be imposed on any sale of property by the Debtor.

C.) Transmittal of Distributions to Parties Entitled Thereto

Except with respect to Class 2 Unimpaired Claims, or as otherwise agreed with the Holder of an Allowed Claim, (a) all Distributions by check shall be deemed made as of the date that such check is postmarked, when mailed through the United States Postal Service and (b) all Distributions by wire or other electronic transfer shall be deemed made as of the date that such transfer is made. In the event a Creditor reports to the Debtor that a Distribution paid by check as not being received within 21 days of the applicable payment due date for such Distribution, Debtor shall cancel such payment and issue a new check to such Creditor.

Except with respect to Class 2 Unimpaired Claims, or as otherwise agreed with the Holder of an Allowed Claim in respect thereof or as provided in the Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail, upon compliance by the

Holder with the provisions of the Plan, to (a) the latest mailing address Filed for the Holder of an Allowed Claim entitled to a Distribution; (b) the latest mailing address Filed for a Holder of a Filed power of attorney designated by the Holder of such Claim to receive Distributions; (c) the latest mailing address Filed for the Holder's transferee as identified in a Filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e); or (d) if no such mailing address has been Filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

D.) Disputed Claims

Notwithstanding all references in the Plan to Claims that are Allowed, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of the amount of Distributions due to the Holders of Allowed Claims, each Disputed Claim shall be treated as if it were an Allowed Claim, as appropriate, except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or otherwise determines the amount for such Disputed Claim, such amount as determined by the Bankruptcy Court shall be used as to such Claim.

After an objection to a Disputed Claim is withdrawn or allowance is determined by the Bankruptcy Court in a Final Order, the Distributions due on account of any resulting Allowed Claim shall be paid by the Debtor to such Creditor in accordance with the frequency, amounts and manner of Distribution for the Class of the Claim of such Creditor.

Notwithstanding any provision in the Plan to the contrary, for any Disputed Claim which is declared Disallowed, whether in whole or in part, such Claim or Disallowed portion thereof, shall be permanently discharged upon entry of any order granting a discharge to the Debtor.

E.) Unclaimed Property

For any property that remains unclaimed for 90 days or more after Distribution thereof by mail to the last known mailing address of the Creditor entitled thereto, (i) the Debtor shall contact Creditor to ascertain the reason such property has not been claimed and (ii) if the Debtor is unable to contact Creditor at that time, Debtor may choose to cancel and hold such property, for later Re-distribution, until Debtor is able to contact Creditor.

Notwithstanding the foregoing, if any Distribution, that is sent by mail to a Creditor at the last known mailing address by the Debtor, is returned without a forwarding address, the Debtor

may choose not to issue any further Distributions until such Creditor provides the Debtor with a current up-to-date mailing address or payment details for Distribution via wire or electronic transfer. This section shall not apply to Class 2 Creditors.

E.) Saturday, Sunday or Legal Holiday

If any payment, Distribution, or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## ARTICLE IX
### Procedures for Resolving Disputed Claims

A.) Prosecution of Objections to Claims

Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be Filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made no more than 180 days after the Effective Date. The Debtor, however, may seek an extension of time to object to Claims. If no objection has been filed to a Claim within the periods set forth in this paragraph (as such periods may be extended by the Bankruptcy Court), then such Claim shall be Allowed.

Except as set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of the Chapter 11 Case, against or with respect to any Claim. Except as set forth in the Plan, upon Confirmation, the Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Chapter 11 Case as if the Chapter 11 Case had not been commenced.

B.) Estimation of Claims

The Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

### C.) Cumulative Remedies

All of the aforementioned objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as such Administrative Claim or Claim becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim or Disputed Claim for purposes related to allocations, Distributions, and voting under the Plan.

### D.) Payments and Distributions on Disputed Claims

Notwithstanding any provision in the Plan to the contrary, no payments or Distributions will be made with respect to a Disputed Claim until the allowance or resolution of such Claim by settlement, by Final Order and/or by the occurrence of a future event in the case of Claim that is contingent.

### E.) Allowance of Claims

#### 1.) Disallowance of Claims

All Claims held by Entities against whom the Debtor has asserted a Cause of Action under sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan,

both consequences to be in effect until such time as such Causes of Action against that Entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor.

2.) <u>Allowance of Claims</u>

Except as expressly provided in the Plan, no Claim shall be deemed Allowed by virtue of Confirmation, unless and until such Claim is deemed Allowed under the terms of the Plan, the Bankruptcy Code or by Court order.

F.) <u>Controversy Concerning Impairment</u>

If a controversy arises as to whether any Claims or any Class of Claims are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

G.) <u>Claims Disputed by Debtor</u>

At this time, the Debtor disputes the following Claims as follows:

1.) Beck Gold Creek Ranch, LLC (Claim 21-1) – Disputed in its entirety.

2.) Knife River Corporation – Northwest (Claim 11-1) – Disputed in its entirety.

3.) Milodragovich, Dale & Steinbrenner, P.C. (Claim 14-1) – Disputed in its entirety.

4.) Richard Zamzow (Claims 15-1, 16-1 and 17-1) – Disputed as to amount.

5.) Runft & Steele Law Offices (Claim 10-1) – Disputed as to amount.

## ARTICLE X

### Causes of Action

A.) <u>Maintenance of Causes of Action</u>

Except as otherwise provided in the Plan, any Cause of Action under any theory of law, including without limitation under the Bankruptcy Code, accruing to the Debtor shall remain an Asset of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date shall be transferred to and vest in the Debtor.

## ARTICLE XI

### Conditions Precedent to Confirmation and Consummation of the Plan

A.) Condition Precedent to Confirmation

It is a condition to Confirmation that (a) the Confirmation Order shall approve in all respects all of the provisions, terms and conditions of the Plan, and (b) the Confirmation Order is satisfactory to the Debtor in form and substance.

B.) Conditions Precedent to Consummation

It is a condition of Consummation that (a) the Confirmation Order shall have been signed by the Bankruptcy Court and duly entered on the docket for the Chapter 11 Case by the Clerk of the Bankruptcy Court in form and substance acceptable to the Debtor; and (b) the Confirmation Order shall be a Final Order.

C.) Effect of Non-Occurrence of Conditions to Consummation

If the Confirmation Order is vacated, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any equity interests in, the Debtor, his property or property of the Estate; (b) prejudice in any manner the rights of the Debtor; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor in any respects.

## ARTICLE XII

### Retention of Jurisdiction

Notwithstanding Confirmation or the Effective Date having occurred, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court shall have and retain jurisdiction over matters arising out of or related to the Chapter 11 Case or the Plan, in accordance with the Bankruptcy Code, Bankruptcy Rules or applicable non-bankruptcy law.

## ARTICLE XIII

## Liquidation Analysis

The Debtor is proposing a Reorganization Plan where most of his Assets will be retained, but some of them shall be liquidated in order to fund the Plan satisfy Creditor obligations. The Plan must provide that a non-consenting impaired Creditor of consenting Class receive at least as much as he would if the Debtor's Estate were to be liquidated under a Chapter 7 liquidation case.

In a Chapter 7 case, the general rule is that the Debtor's assets are sold by a trustee, usually at "fire-sale/liquidation" values. The unsecured Creditors get paid only after administrative claimants, priority Claim Holders and secured Creditors are paid in full. Certain unsecured Creditors get paid before other unsecured Creditors do. Unsecured Creditors with the same priority share in proportion to the amount of their Allowed Claim relative to the total amount of Allowed Claims within the Class that their Claim is classified under.

Estimated valuations for a liquidation of the Debtors Assets are detailed as follows:

| Asset | Market/Going-Concern Values | Liquidation Values |
|---|---|---|
| Real Property | $11,100,000 | $6,500,000 |
| Vehicles | $317,000 | $65,000 |
| Personal/Household Items | $40,000 | $10,000 |
| Financial/Equity/Business Holdings | $10,764,000 | $2,500,000 |
| Trade Tools, Supplies, etc | $12,000 | $3,000 |
| Misc Property | $140,000 | $30,000 |
| *Total* | *$22,373,000.00* | *$9,108,000.00* |

In a Chapter 7 scenario, general unsecured Creditors would receive much less return on their Claims than under the Debtor's Plan in Chapter 11 for several reasons. First, the Debtor estimates the value of the Debtor's assets under a full-on liquidation scenario to range anywhere from 50% to 80% less, depending on the Asset, than market/going concern value. Several of the Debtors Asset holdings are not readily marketable, or downright impossible to market in some instances. Though some of the more highly marketable holdings (real property) have significant equity, the recovery from them is likely to be drastically reduced because many are encumbered

by Secured Claims and if sold under liquidation circumstances, most of the equity, if not all in some cases, would be lost.

Additionally, in a Chapter 7 case, a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount not to exceed "*25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case...*" 11 U.S.C. § 326(a). This is in addition to reimbursement of expenses for compensation of any professionals that the trustee may employ, costs of the sale(s) of Assets as well as other chapter 7 administrative expenses, thus diminishing monies available for payment to unsecured creditors even more.

Further complicating matters, Creditor Richard Zamzow currently holds two Secured Claims in the total approximate amount of $1,500,000, encumbering a total of five of the Debtor's real properties with a total market value of approximately $3,500,000 to $4,000,000. On May 19, 2020, the Bankruptcy Court granted Mr. Zamzow relief from the automatic stay thus allowing Mr. Zamzow to resume previous foreclosure sale proceedings, potentially depriving the Estate of up to $2,000,000 to $2,500,000 of equity that could otherwise be used to pay other Creditors.

Assuming the Debtor had to liquidate its assets as indicated above and pay off the Claims of Secured Creditors, it is likely the Debtor would be left with drastically reduced funds for payment to general Unsecured Creditors and the Debtor estimates that such Creditors would receive satisfaction of only 60% to 85% of their respective Claims.

Thus, if there were a liquidation of Assets, the Debtor believes that general unsecured Creditors would receive significantly less than is being proposed in Debtor's Plan, due to the nature and amount of the Secured Claims against the Debtor's Assets and the nature and value of such Assets, as well as reduced recoveries due to Assets being sold at highly reduced values.

Furthermore, even if there were adequate amounts available to pay some level of Distribution to general unsecured Creditors in full-on liquidation, the Debtor's Plan proposes payment in full with accruing interest and it would be unlikely for general unsecured creditors to receive payment in full, with interest, through chapter 7 liquidation.

## ARTICLE XIV
## Plan Feasibility

The Debtor believes that the Plan is feasible based upon the high marketability of the real properties to be sold. The Debtor projects that, if sold, the high value and high equity of the subject properties would generate enough proceeds to pay most if not all creditors within a 6-8 month timeline. By establishing a deadline of 450 days to fully pay all Creditors, the Debtor is allowing a reasonable amount of cushion in order to successfully market the properties, thereby increasing the chances of consummating sales of the properties at the best possible values.

## ARTICLE XV
## Tax Consequences of the Plan

A.) Tax Consequences on Creditors

The Debtor's cannot cover or illuminate all of the different tax consequences that may apply in each Creditor's particular financial circumstances, however is can be stated that most Creditors will incur some level of tax liability due to gains received in the form of interest income received from the Debtor for payment of interest on debts. Further, any Creditor who receives property or an equity interest therein instead of a cash payment in satisfaction of a Claim, and subsequently such Creditor sells such property or interest, such Creditor may or may not realize a capital gain, depending on the timing and amount of such sale as well as the Creditor's basis in such property or interest.

Each Creditor should consult with their accountant regarding the details and specific tax consequences of their particular financial circumstances.

## ARTICLE XVI
## Risks of the Plan

As with any business or financial endeavor, there is always some level of risk and although the Debtor will make every effort to minimize the length of time it will take to achieve Consummation of the Plan, it is impossible to predict with certainty the amount of time that such

an endeavor will take or to assure parties in interest that the Plan will be confirmed. That is why the Debtor set out a 450 day deadline in the Plan, so as to allow enough wiggle room to account for any issues or delays that may arise while not being too long so as not to be unreasonable.

Given the current events, geopolitical climate and economic volatility in the United States and throughout the world, there is risk that real property values could decline significantly in the next 3-5 years. The Debtor anticipates that in the next 1 to 2 years real property values may likely decline somewhat but believes that such a decline will not be significant enough to affect the feasibility of the Plan or the ability of the Debtor to achieve Consummation.

With that said, the Debtor is confident that he will be also be able to obtain consolidation financing in addition to the selling one or more properties, which together would allow the Debtor to fulfill the Plan quicker and such financing would also act as a hedge of sorts against the possibility of a future dive of property values, which would make Consummation of the Plan more difficult without outside financing.

Additionally the Debtor may fail to satisfy the vote requirements. If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, Confirmation of the Plan. In the event that sufficient votes are not received, the Debtor may seek to amend or modify the Plan in order to attain Confirmation.

## ARTICLE XVII
### Miscellaneous Provisions

A.) Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C § 1930 shall be paid on or before the Initial Distribution Date. The Debtor shall pay fees that accrue under 28 U.S.C. § 1930 until a Final Decree is entered in the Chapter 11 Case, or the Bankruptcy Court otherwise orders.

B.) Modification of Plan

The Debtor reserves, in accordance with the Bankruptcy Code, the right to amend or modify the Plan prior to the entry of the Confirmation Order.

Prior to entry of the Confirmation Order, the Plan may only be modified with the consent of the Debtor. After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, if (a) the Plan has not been substantially consummated and (b) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

C.) Revocation of Plan

The Debtor reserves the right to withdraw the Plan at any time before the entry of the Confirmation Order. If any of the following events occur: (a) the Debtor revokes or withdraws the Plan; (b) the Confirmation Order is not entered; (c) the Effective Date does not occur; (d) Consummation of the Plan is not substantially achieved; or (e) the Confirmation Order is reversed or revoked, then the Plan shall be deemed null and void. In any of those events, nothing contained in the Plan shall be deemed to constitute a waiver of any claim by the Debtor, or to prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

D.) Successors and Assigns

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

E.) Reservation of Rights

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, except as expressly set forth herein. The filing of the Plan, the statements or provisions contained therein, or the taking of any action by the Debtor with respect to the Plan shall not be, or shall not be deemed to be, an admission or waiver of any rights of the Debtor with respect to the Holders of Claims prior to the Effective Date.

F.) No Release

Except as otherwise provided in the Plan, no Entity and/or any such Entity's parent, subsidiaries, affiliates, related Entities, officers, directors, agents and/or employees shall be released and/or discharged of any liabilities under the Plan except as specifically provided in the Plan. Consequently, except as specifically provided in the Plan, all Entities shall remain liable to the extent presently provided under any applicable law with respect to any claims against any such Entities.

G.) Further Assurances

The Debtor and all Holders of Claims receiving Distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

H.) Entire Agreement

Except with respect to Class 2 Unimpaired Claims, the Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of the Plan.

I.) Failure of Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

J.) Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the internal laws of the State of Idaho shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to the conflict of law provisions of the State of Idaho.

K.) Headings

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor shall affect in any manner the provisions or interpretation(s) of the Plan.

L.) Notices

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by first class U.S. mail, postage prepaid to:

*Gordon Jones and Vicki Jones*

*8840 W River Beach Ln*

*Garden City, ID*

M.) Severability

In the event that any provision of the Plan is found to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of the Plan shall not in any way be affected or impaired thereby, and such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability.

N.) Default under the Plan

Except with respect to Class 2 Unimpaired Claims, and/or unless otherwise agreed between Debtor and the Holder of an Allowed Claim or pursuant to state or federal law, no default shall be declared under the Plan unless any payment or performance due under the Plan (other than a payment required on the Effective Date) shall not have been made or deemed made 30 days after written notice of the default is received by the Debtor. Any notice of default shall (a) conspicuously state that it is a notice of default; (b) describe with particularity the nature of the default, including a reference to the specific provisions of the Plan as to which a default or defaults have allegedly occurred; and (c) describe any action required to cure the default, including the exact amount of any payment required to cure such default, if applicable. The Debtor shall have the right to bring the issue of default before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to cure the default in a reasonable period of time.

Notwithstanding the foregoing, if the Debtor fails to pay any currently accruing tax liability or fails to make payment of any tax or any payment due under the Plan to the Internal

Revenue Service or Idaho State Tax Commission within 20 days of the due date of such payment, or fails to file any required Federal or Idaho tax return within 20 days of the due date of such return, then the Internal Revenue Service or Idaho State Tax Commission may send a written Notice of Default to the Debtor and any counsel of record. If the Internal Revenue Service or Idaho State Tax Commission declares the Debtor to be in default, and such default is valid and uncured for a period of 14 days, then the entire pre-petition liability and any other amounts due, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor. If the default is not cured within 14 days of such demand or other arrangement agreed in writing, then the Internal Revenue Service or Idaho State Tax Commission may collect any unpaid liabilities through the administrative collection provisions of the appropriate tax code and any injunction or stay under the Plan shall be lifted for this purpose without further order of the Court. The Debtors shall be liable for such unpaid liabilities as if no bankruptcy had occurred.

## ARTICLE XVIII

### Disclosure Statement

When the Debtor solicits the requisite acceptance(s) of this Plan, it will be accompanied by a Disclosure Statement that will have been approved by the Court, as amended, prior to such solicitation. The Debtor requests that all parties whose acceptance(s) of this Plan are solicited should direct their attention to the Disclosure Statement.

## ARTICLE XIX

### Confirmation Request

Gordon Jones and Vicki L Jones, as proponents of this Plan, request confirmation of this Plan pursuant to section 1129(a) and/or 1129(b) of the Bankruptcy Code.

Dated: September 15, 2020

Gordon Jones

Vicki L Jones